Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| JORGE M. VARGAS LOUBRIEL<br><br>Apelado<br><br><br>vs.<br><br><br>C.R. CONSTRUCTION, INC.<br><br>Apelante | TA2025AP00195 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Arecibo<br><br>Caso: BC2023CV00121<br><br>Sobre: Despido Injustificado (Procedimiento Sumario) |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Robles Adorno.[1]

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de diciembre de 2025.

El 1 de agosto de 2025, CR Construction, Inc., (parte apelante) presentó ante nos un recurso de *Apelación* en el que solicitó que revoquemos la *Sentencia* emitida el 22 de julio de 2025, notificada el 23 de julio de 2025, por el Tribunal de Primera Instancia, Sala Superior de Manatí (TPI o foro primario).[2]

En el aludido dictamen, el foro primario resolvió que el señor Jorge M. Vargas Loubriel (el señor Vargas Loubriel o apelado) fue despedido injustificadamente tras la parte apelante no evidenciar que el señor Vargas Loubriel incurrió en una conducta violenta que justificara el despido. Asimismo, declaró Ha Lugar la *Querella* radicada por el apelado y ordenó que la parte apelante indemnizara al señor Vargas Loubriel por la suma de $54, 240.00 en concepto de mesada y ordenó la cantidad de $8,136.00 por concepto de honorarios de abogados.

---

[1] Véase OATA-2025-170 del 3 de septiembre de 2025 en la que se designa al Juez Robles Adorno en sustitución de la Jueza Prats Palerm.
[2] Entrada Núm. 69 del caso Núm. BC2023CV00121 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

Evaluada la prueba oral y por los fundamentos que expondremos a continuación, se revoca la *Sentencia* apelada.

**I.**

El caso de epígrafe tiene su origen cuando el 4 de septiembre de 2023, el apelado instó una *Querella*, a través del procedimiento sumario amparado en la *Ley de Procedimiento Sumario de Reclamaciones Laborales*, Ley Núm. 2 de 17 de octubre de 1961 (Ley Núm. 2-1961), según enmendada, 32 LPRA sec. 3118, *et. seq*, en la que alegó que fue despedido injustificadamente.[3] Indicó que, el 28 de febrero de 1994, comenzó a laborar para la parte apelante como albañil. Adujo que, el 2 de junio de 2023, en horas laborales, el señor Ríos Escobar, dueño de CR Construction Inc., suspendió al señor Vargas Loubriel y ordenó que este se retirara de las facilidades de BASF Agricultural Products of P.R (BASF). Ese mismo día, el señor Ríos Escobar intentó comunicarse con el apelado, no obstante, la llamada fue atendida por la esposa del apelado. En dicha llamada, el señor Ríos Escobar le informó a la esposa del apelado que este fue despedido "por lo que dijo en la fábrica". Ante ello, en la *Querella* el apelado negó haber realizado alguna expresión que acarreara el despido. Por tanto, solicitó una mesada de $18, 720.00.

Así las cosas, el 25 de septiembre de 2025, la parte apelante radicó una *Contestación a querella* en la que, en su mayoría, negó las alegaciones del apelado.[4] En esa línea, arguyó que el señor Vargas Loubriel exhibió una conducta impropia dado que amenazó a un compañero de trabajo y, por tanto, tuvo que ser removido de sus funciones. También, agregó que el apelado amenazó al Presidente de la parte apelante. Así pues, la parte apelante alegó que el despido fue conforme a las normas contractuales y de no

---

[3] Entrada Núm. 1 del caso Núm. BC2023CV00121 en el SUMAC.
[4] Entrada Núm. 7 del caso Núm. BC2023CV00121 en el SUMAC.

haber despedido al apelado, BASF hubiese cesado las relaciones laborales con la parte apelante. Consecuentemente, la parte apelante afirmó que procedía cesantear al señor Vargas Loubriel ante su conducta violenta.

Tras varios incidentes procesales, el 31 de octubre de 2023, el señor Vargas Loubriel instó una *Solicitud de corrección o enmienda al cálculo de la mesada de la querella* en la que enmendó la cuantía solicitada para que fuese un monto de $54, 240.00 tras haber realizado un error matemático.[5]

Tiempo después, el 11 de marzo de 2024, las partes, en conjunto, presentaron un *Informe inicial de conferencia con antelación al juicio*[6] en la que estipularon los siguientes hechos:

1. C. R. Construction, Inc., es una corporación doméstica con fines de lucro, autorizada a hacer negocios en Puerto Rico y se dedica a la actividad comercial de construcción.
2. La empresa tiene sus facilidades físicas y oficinas centrales en el Municipio de Arecibo, Puerto Rico.
3. José Ríos Escobar es Presidente de C. R. Contruction, Inc.
4. Vargas Loubriel comenzó a trabajar con el patrono el 28 de febrero de 1994.
5. Al momento de su despido, el Querellante tenía 29 años de servicio para el patrono.
6. Vargas Loubriel ejercía las funciones de albañil.
7. Vargas Loubriel tenía una jornada regular a tiempo completo.
8. Al momento de su despido, el Querellante devengaba un salario de $12.00 por hora.
9. Para el 2023, C. R. Construction tenía un contrato de servicios con las empresas BASF.
10. Arnaldo Ortiz es, para el momento de ocurridos los hechos narrados en la Querella, un oficial de la empresa BASF.
11. Grace M. López es, para el momento de ocurridos los hechos narrados en la Querella, Gerente de Logística de la empresa BASF. 12. El Querellante llevaba reportándose a trabajar a BASF como parte del contrato de servicios de esta empresa con C. R. Construction, aproximadamente 15 años.
13. Para 2023, Christopher Alicea era Supervisor de Vargas Loubriel asignado a BASF.
14. Para 2023, Arnaldo La Fuente y José Ruiz, eran empleados de C. R. Construction asignados a trabajar en BASF.[7]

---

[5] Entrada Núm. 17 del caso Núm. BC2023CV00121 en el SUMAC.
[6] Entrada Núm. 28 del caso Núm. BC2023CV00121 en el SUMAC.
[7] Entrada Núm. 28 del caso Núm. BC2023CV00121 en el SUMAC, págs. 5-6.

Por otro lado, el apelado alegó que aún existe controversia en cuanto a si el despido, como sanción, fue proporcional a la posible falta que este cometió. En cuanto a la parte apelante, esta adujo que la controversia que hay en su contra es si el despido fue justificado. Asimismo, anunciaron la prueba documental que desfilaría en el juicio y los testigos que testificarían.

Así las cosas, el juicio en su fondo fue celebrado los días 25 de septiembre de 2024, 16 de octubre de 2024, 4 de diciembre de 2024 y el 22 de enero de 2025, en el que las partes estipularon los siguientes documentos:

> Exhibit 1 – Expediente de personal del querellante.
> Exhibit 2 – Comunicación de Compañía BASF con fecha del 25 de septiembre de 2023 firmada por Grace M. López.
> Exhibit 3– Contrato de servicios entre la parte querellada y BASF Agricultural Product.[8]

Asimismo, el apelado presentó los siguientes testigos de los cuales brevemente relataremos los hechos pertinentes durante sus testimonios. Veamos.

**José Iván Ríos Escobar**

El señor José Iván Ríos Escobar (el señor Ríos Escobar) inició su testimonio indicando que era contratista y presidente de la compañía CR Construction, Inc.[9] Añadió que, la empresa se dedicaba a realizar labores de construcción con diversos materiales, entre ellos, bloques de cemento, acero, cemento y soldadura.[10] Indicó que, le provee servicios de construcción a la compañía BASF en Manatí y a Pfizer Pharmaceutical.[11] Sostuvo que, en el contrato suscrito con BASF, esta estipuló las normas y condiciones que debía cumplir la parte apelante en sus facilidades.[12] En lo pertinente, admitió que, desde el año 1994,

---

[8] Entrada Núm. 42 del caso Núm. BC2023CV00121 en el SUMAC.
[9] Transcripción de la Prueba Oral (TPO), pág. 20; líneas 9-14.
[10] TPO, pág. 21; líneas 25-28.
[11] *Íd.*, pág. 20; líneas 1-4.
[12] *Íd.*, pág. 22; líneas 27-29.

conoce al señor Vargas Loubriel, ello tras en ese año, el apelado iniciar a laborar con la parte apelante.[13]

Expresó que, el 2 de junio de 2023, en horas de la mañana se encontraba en su oficina y recibió una llamada por parte de BASF en la que le informó que ocurrió una situación en la planta con el apelado y BASF solicitó que este fuese removido de sus labores.[14] Ante ello, el señor Ríos Escobar se trasladó a la planta de BASF en Manatí dado que su oficina estaba ubicada en Arecibo.[15] Una vez llegó a la planta de BASF, este testificó que instruyó al personal de seguridad para que le indicara al señor Vargas Loubriel que debía irse de las facilidades de BASF.[16] Aseveró que, una vez el apelado llegó a la caseta de seguridad este le comunicó al apelado que tenía que retirarse ante las expresiones que profirió.[17] Luego, escuchó una conversación entre varios empleados, entre ellos el apelado, en el que este expresó lo siguiente: "bueno, si me van a botar que me avancen a botar, ya yo estoy cansado de trabajar en esta ... de compañía".[18] Ese mismo día, en horas de la tarde, el señor Ríos Vargas sostuvo que, llamó al apelado y respondió la esposa de este.[19] En esa línea, la esposa del apelado le respondió que no iban a firmar ningún documento y ya habían llevado el ID del trabajo.[20]

Por otro lado, durante su testimonio, el señor Ríos Escobar añadió que en dos ocasiones el señor Vargas Loubriel fue amonestado, pero no tuvo que ver con amenaza o violencia.[21] Alegó que el despido del apelado se debió a que, BASF le notificó que, el señor Vargas Loubriel expresó frente a su supervisor que este

---

[13] *Íd.*, pág. 26; líneas 12-16.
[14] *Íd.*, pág. 31; líneas 24-28.
[15] *Íd.*, pág. 32; líneas 5-8.
[16] *Íd.*, pág. 33; líneas 1-6.
[17] *Íd.*, pág. 33; líneas 28-30.
[18] *Íd.*, pág. 34; líneas 24-27.
[19] *Íd.*, pág. 36; líneas 1-18.
[20] *Íd.*, pág. 88; líneas 9-11.
[21] *Íd.*, pág. 46; líneas 29-31; *Íd.*, pág. 47; líneas 1-4.

merecía un puño.[22] Por ende, explicó que, a solicitud de BASF y a raíz de su conducta, se le notificó por escrito, al apelado sobre su despido.[23]

### Arnaldo Mojica Ortiz

El señor Arnaldo Mojica Ortiz (el señor Mojica Ortiz) era Coordinador de Turno en BASF Agricultural de Manatí.[24] El señor Mojica Ortiz tenía el deber de evaluar si las condiciones en las facilidades de BASF están seguras para laborar.[25] Narró que, el 2 de junio de 2023, el señor Vargas Loubriel se encontraba en el área de empaque líquido junto con otros empleados.[26] Así pues, sostuvo que, durante el proceso de completar la solicitud de permiso para laborar en dicha área, el apelado le manifestó a un compañero su inconformidad sobre las actitudes de su supervisor, el señor Christopher Alicea.[27] A raíz de ello, el señor Mojica Ortiz alegó que le expresó al señor Vargas Loubriel que esas eran expresiones fuertes.[28] En esa línea, este indicó que, el apelado mencionó que si hablaba con su supervisor le iba a dar "un puño".[29] Ante la actitud del apelado, el señor Mojica Rivera adujo que se comunicó con el señor Ríos Escobar para notificarle sobre la actitud hostil del apelado y por motivos de seguridad este debería ser removido de las facilidades de BASF.[30] Sin embargo, el testigo mencionó que se quedó en espera del señor Ríos Escobar para que el señor Vargas Loubriel se retirara de BASF.[31] Luego seguridad le informó al señor Mojica Rivera que el apelado se había retirado de las facilidades.[32] Ante ello, fue generado un correo electrónico notificando el

---

[22] *Íd.*, pág. 54; líneas 14-17.
[23] *Íd.*, pág. 93; líneas 26-29.
[24] *Íd.*, pág. 139; líneas 5-6.
[25] *Íd.*, pág. 145; líneas 10-14.
[26] *Íd.*, pág. 150; líneas 6-9.
[27] *Íd.*, pág. 152; líneas 12-14; *Íd.*, pág. 153; líneas 5-7.
[28] *Íd.*, pág. 154; líneas 2-5.
[29] *Íd.*
[30] *Íd.*, pág. 155; líneas 21-23.
[31] *Íd.*, pág. 156; líneas 1-4.
[32] *Íd.*, pág. 157; líneas 17-20.

incidente a su supervisora, la señora Grace López.[33] En fin, afirmó que temía que el señor Vargas Loubriel actuara conforme las expresiones que profirió.[34]

### Grace M. López Alvarado

La señora Grace M. López Alvarado (la señora López Alvarado) era Gerente de Logística y estaba a cargo de la seguridad de BASF en Manatí.[35] La señora López Alvarado explicó que, como parte de sus funciones, cuando acontece algún evento relacionado a la seguridad se le notifica a esta y lo consulta con Corporate Security para tener conocimiento sobre que determinación debería realizarse.[36] En lo pertinente, la señora López Alvarado testificó que, el día de los hechos, el señor Ortiz Mojica le informó sobre las expresiones manifestadas por el señor Vargas Loubriel.[37] Consecuentemente, la señora López Alvarado declaró que, conforme los protocolos, el apelado debía acudir a la caseta de seguridad para que el dueño de la compañía lo buscara debido a que como política de la compañía no estaba permitido las amenazas.[38] Al respecto, el supervisor de BASF fue notificado sobre el incidente.[39] No obstante, la señora López Alvarado aclaró que, a raíz del suceso ocurrido el 2 de junio de 2023, la compañía BASF no prohibió la entrada del apelado a las facilidades de BASF.[40] Sin embargo, ante las expresiones del apelado, la señora López Alvarado ordenó la remoción del señor Vargas Loubriel dado que como política de seguridad de BASF no permiten amenazas.[41] Sin embargo, aclaró que, las políticas de la compañía no se le hacia entrega a los empleados de la parte apelante.[42]

---

[33] *Íd.*, pág. 158; líneas 29-30.
[34] *Íd.*, pág. 187; líneas 3-6.
[35] *Íd.*, pág. 206; líneas 8-10.
[36] *Íd.*, pág. 207; líneas 26-28.
[37] *Íd.*, pág. 211; líneas 15-20.
[38] *Íd.*, pág. 211; líneas 22-28.
[39] *Íd.*, pág. 212; líneas 28-31.
[40] *Íd.*, pág. 222; líneas 7-13.
[41] *Íd.*, pág. 225; líneas 13-18.
[42] *Íd.*, pág. 237; líneas 1-6.

**Jorge Vargas Loubriel**

El señor Vargas Loubriel arguyó que, cuando inicio a laborar con CR Construction, la parte apelante entregó un acuerdo de responsabilidad de empleo.[43] El señor Vargas Lobriel indicó que no había tenido problemas con otro empleado hasta el 2 de junio de 2023.[44] El apelado aseveró que rendía labores en BASF, como empleado de CR Construction, Inc., durante quince (15) años.[45] A su vez, planteó que, en el transcurso en que laboró en BASF, no le fue entregado ningún documento sobre las políticas de la compañía.[46]

En otros términos, el señor Vargas Loubriel sostuvo que, el 2 de junio de 2023, el señor Christopher Alicea los vio llegar y realizó una expresión facial en la que demostró que "no esperaba la llegada de los empleados y la ausencia de un empleado".[47] Acto seguido, el apelado y otros empleados acuden a su área de trabajo y notó que el señor Christopher Alicea dialogó con otros empleados, pero lo notaba molesto.[48] Entonces, el señor Vargas Loubriel le manifestó a un compañero de trabajo lo siguiente: "viste, desde que llegamos nos están ignorando, de aquí pa' aca, y vuelven otra vez, nos pasan por el lado y no nos hablan ni ná, será que tiene un enojito o algo, pero desde esta mañana está igual", refiriéndose a Christopher Alicea.[49] Luego de realizar el comentario de "meterle un puño" el señor Vargas Loubriel fue instruido de las labores que debía llevar a cabo ese día.[50] Después, llegó un empleado de seguridad el cual le informó al apelado que se dirigiera a la caseta de seguridad.[51] Relató que, una vez llegó a la

---

[43] *Íd.*, pág. 240; líneas 2-6.
[44] *Íd.*, pág. 242; líneas 1-5.
[45] *Íd.*, pág. 243; líneas 14-17.
[46] *Íd.*
[47] *Íd.*, pág. 246; líneas 24-28.
[48] *Íd.*, pág. 247; líneas 18-24.
[49] *Íd.*, pág. 252; líneas 29-31; *Íd.*, pág. 253; líneas 1-3; líneas 7-9.
[50] *Íd.*, pág. 255; líneas 21-26; *Íd.*, pág. 256; líneas 8-10.
[51] *Íd.*, pág. 259; líneas 22-25.

caseta del guardia, el señor Ríos Escobar le informó que lo llamaron sobre un comentario que este realizó y se iba a comunicar con BASF.[52] Entonces, el apelado fue llevado a su casa por instrucciones del señor Ríos Escobar, dado que a este lo llevaba a BASF una guagua de la compañía CR Construction.[53]

En horas de la tarde, el apelado testificó que su esposa le informó que fue despedido de CR Construcion.[54]

### Mirta Collazo González

La señora Mirta Collazo González (la señora Collazo González) era esposa del señor Vargas Loubriel. Esta testificó que el 2 de junio de 2023, se encontraba en su hogar y respondió una llamada telefónica por parte del señor Ríos Escobar, en el que le indicó que quería comunicarse con el apelado.[55] La señora Collazo González le informó que su esposo no se encontraba. En esa línea, el señor Ríos Escobar le informó a la señora Collazo González que el apelado estaba despedido de la compañía por lo sucedido en las facilidades de BASF.[56] Ante dicha información, la señora Collazo González indicó que, le cuestionó al señor Ríos sobre la drástica sanción de despedir al apelado, pero no obtuvo una respuesta.[57]

Así las cosas, el 23 de julio de 2025, el TPI emitió una *Sentencia* en la que formuló ciento dos (102) determinaciones de hechos en las que, en su mayoría, versaban sobre los hechos que dieron lugar al despido del señor Vargas Loubriel.[58] Ahora bien, el foro primario resolvió que durante los veinte nueve (29) años en que el señor Vargas Loubriel laboró con CR Construction Inc., la conducta del apelado fue de excelencia. Con ello, el TPI determinó que el señor Vargas Loubriel fue despedido por un comentario de

---

[52] *Íd.*, pág. 261; líneas 5-6; líneas 15-17.
[53] *Íd.*, pág. 264; líneas 4-7.
[54] *Íd.*, pág. 264; líneas 26-29.
[55] *Íd.*, pág. 300; líneas 10-12.
[56] *Íd.*, pág. 300; líneas 22-24.
[57] *Íd.*, pág. 300; líneas 25-27.
[58] Entrada Núm. 69 del caso Núm. BC2023CV00121 en el SUMAC.

molestia el cual expresó a otro compañero y no directamente a su supervisor. Asimismo, el *foro a quo* razonó que el comentario del apelado no fue dirigido en aras de agredir físicamente a su supervisor. Ello, toda vez que de la prueba desfilada ante su consideración fue evidenciado que este simplemente expresó su inconformidad con respecto a la actitud de su supervisor. Subsiguiente, el foro primario razonó que, a raíz de los testimonios de los empleados de BASF, no había inconveniente en que el señor Vargas Loubriel laborara en las facilidades de BASF.

En otros términos, el TPI atisbó que la parte apelante no presentó ante su consideración prueba acerca de las normas de comportamiento de la empresa y las consecuencias. El TPI destacó que, el apelado desconocía sobre las normas de conducta de la parte apelante y BASF. Consecuentemente, el foro primario resolvió que el señor Vargas Loubriel fue despedido injustificadamente debido a que la parte apelante le podía haber concedido una oportunidad al apelado para explicar su expresión. Por tanto, el TPI declaró Ha Lugar la *Querella* y ordenó a la parte apelante que cumpliera con el pago de $54, 240.00 por concepto de mesada.

Inconforme, el 1 de agosto de 2025, la parte apelante instó una *Apelación* en la que coaligó los siguientes señalamientos de error:

> Primer error: Erró el TPI al ignorar el mandato del Art. 3 de la Ley Núm. 26-1992, 29 LPRA sec. 575b y lo resuelto por el Tribunal Supremo de Puerto Rico en Ocasio Méndez v. Kelly Services, 2005 TSPR 004.

> Segundo error: Erró el TPI al evaluar la prueba de forma errónea y de manera apasionada contra CR, imputándole responsabilidad por los actos de BASF., con lo que privó a la parte apelante del debido proceso de ley.

En atención a nuestra *Resolución,* el 7 de noviembre de 2025, el señor Vargas Loubriel instó un *Alegato en cumplimiento de orden y oposición a la apelación del patrono.*

Con el beneficio de la comparecencia de las partes, procederemos a resolver el recurso ante nos.

**II.**

**A.**

El Art. 2 de la Ley Sobre Despidos Injustificados, Ley Núm. 80 de 30 de mayo de 1976 (Ley Núm. 80-1976), según enmendada, 29 LPRA sec. 185b, establece, en lo atinente, que:

> Se entenderá por justa causa para el despido de un empleado aquella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono. Además, se entenderá por justa causa aquellas razones que afecten el buen y normal funcionamiento de un establecimiento que incluyen, entre otras, las siguientes:
> (a) Que el empleado incurra en un patrón de conducta impropia o desordenada.
> (b) Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.
> (c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.
> (d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.
> (e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.
> (f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento.
>
> [...]

La mencionada ley fue aprobada con el fin primordial de proteger "de una forma más efectiva el derecho del obrero puertorriqueño a la tenencia de su empleo mediante la aprobación de una ley que, a la vez que otorgue unos remedios más justicieros y consubstanciales con los daños causados por un despido injustificado, desaliente la incidencia de este tipo de despido". *Feliciano Martes* v. *Sheraton,* 182 DPR 368, 379 (2011). Los empleados que se puedan beneficiar de esta ley tienen que ser de comercio, industria o cualquier otro negocio o sitio de empleo que: (1) estén contratados sin tiempo determinado; (2) reciban una remuneración, y (3) sean despedidos de su cargo sin que haya mediado justa causa. *Rivera Figueroa* v. *The Fuller Bush Co.,* 180 DPR 894, 906 (2001). Se define como justa causa para el despido la que tiene origen para el buen funcionamiento de la empresa y no al libre arbitrio del patrono. *Srio. del Trabajo* v. *I.T.T.,* 108 DPR 536, 542 (1979). Ahora bien, los patronos deben pagar una mesada a los empleados que son despedidos sin justa causa. *SLG Zapata* v. *J.F Montalvo,* 189 DPR 414, 424 (2013). Todo despido que no fuese basado en una justa causa es considerado injustificado y en el cual el empleado recibe el beneficio de un remedio exclusivo. *Díaz* v. *Wyndham Hotel Corp.,* 155 DPR 364, 378 (2001). El patrono tenía el peso probatorio de demostrar que el despido fue uno justificado por medio de preponderancia de la prueba, de lo contrario se presumía que fue injustificado. *Íd.,* pág. 388. Como cuestión de umbral, para que un empleado se beneficiara de la presunción, esta se activa si: fue empleado de un comercio, industria u otro negocio; su contrato era por tiempo indeterminado; recibía remuneración por su trabajo, y que fue despedido de su puesto. *Rivera Figueroa* v. *The Fuller Bush Co.,* supra, pág. 907.

La Ley Núm. 80-1976, *supra,* no puede ser considerada un código de conducta que contenga una lista de faltas claramente definidas y la sanción que corresponda a cada una. *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.*, 209 DPR 759, 773 (2022), citando a *Srio. del Trabajo v. G.P. Inds., Inc.*, 153 DPR 223, 243 (2001). Los patronos, pueden aprobar reglamentos internos y normas de conducta en el lugar de trabajo que estimen necesarias y los empleados estarán sujetas a ellas, siempre que estos cumplan con un criterio de razonabilidad. *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.*, *supra*, pág. 773. No obstante, el despido puede ser la primera y única sanción cuando la intensidad del agravio así lo requiera para la protección y buena marcha de la empresa y la seguridad de las personas que ahí laboran. *Feliciano Martes v. Sheraton*, 182 DPR 368, 384 (2011); *Secretario del Trabajo v. ITT*, *supra*, pág. 543. La falta o acto aislado que de lugar al despido como primera ofensa debe ser de tal seriedad o naturaleza que revele una actitud que lesione la paz y el buen orden de la empresa. *Feliciano Martes v. Sheraton, supra,* pág. 383*, citando a: Secretario del Trabajo v. ITT*, *supra*, pág. 543 Cónsono con ello, un patrono no puede permitir un ambiente de trabajo en el que los empleados estén impedidos de trabajar en paz y tranquilidad tras sentirse amenazados o serán agredidos por un compañero de trabajo. *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920, 935 (2015).

Sin embargo, la Ley Núm. 80-1976, *supra*, sufrió varias enmiendas ante la aprobación de la Ley de Transformación y Flexibilidad Laboral, Ley Núm. 4 de 26 de enero de 2017 (Ley Núm. 4-2017), según enmendada, 29 LPRA sec. 121*, et seq.* Una de las enmiendas aprobadas fue el orden de prueba puesto que se eliminó la frase que le imponía al patrono el peso de la prueba. *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co., supra,* pág.

776. La citada ley, dispone que los empleados, previo a la vigencia de la ley, gozan de los derechos y obligaciones que tenían previamente. *Íd.* Empero, la Ley Núm. 4-2017, *supra*, no contiene una frase la cual le impone el peso de la prueba al patrono. *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.*, *supra*, pág. 776.Así pues, la Ley Núm. 4-2017, *supra*, es aplicable de acuerdo con el momento de los hechos. *Íd.*, pág. 776.

En otros términos, la Ley Núm. 2-1961, tiene como propósito principal proveerle al obrero un mecanismo procesal expedito que facilite y acelere el trámite de sus reclamaciones laborales. *Rivera v. Insular Wire Products Corp.*, 140 DPR 912, 928 (1996). El procedimiento sumario "es el recurso principal 'para la implantación de la política pública del Estado de proteger el empleo, desalentando el despido sin justa causa y proveyendo al obrero así despedido los medios económicos para la subsistencia de éste y de su familia, en la etapa de transición entre empleos". *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 732 (2016), (citando a *Rivera v. Insular Wire Products*, *supra*, pág. 923). Véase, además, *Izagas Santos v. Family Drug Center*, 182 DPR 463, 480 (2011). A su vez, el Tribunal Supremo ha expresado que la Ley Núm. 2, *supra*, provee un procedimiento expedito para lograr los propósitos de proteger el empleo, desalentar el despido sin justa causa y proveerle al empleado despedido los remedios económicos para su subsistencia mientras obtiene un nuevo empleo. *Ocasio v. Kelly Servs, et al*, 163 DPR 653, 666 (2005).

En lo pertinente a la controversia, el Art. 3 de la *Ley para reglamentar la contratación de empleados temporeros a través de compañías de servicios temporeros*, Ley Núm. 26 de 22 de julio de 1992, según enmendada, 29 LPRA sec. 575b, establece que,

[…]

> Disponiéndose que en cuanto a la legislación que prohíbe el discrimen en el empleo y el hostigamiento sexual, así como la que regula el despido injustificado, responderá de su cumplimiento el que discrimine o despida al empleado o incurra en el acto sancionado por la ley, ya sea la compañía de empleos temporeros o la compañía cliente.
>
> [...]

**B.**

Como parte del debido proceso de ley, es compulsorio añadir a todas las partes que tengan un interés común en un pleito. *Pérez Ríos v. Luma Energy, LLC*, 213 DPR 203, 212 (2023). Este requisito responde a la protección constitucional la cual impide a una persona que no sea privada de su libertad y propiedad sin un debido proceso de ley y la necesidad de que el dictamen judicial sea emitido en su día completo. *Pérez Ríos v. Luma Energy, LLC*, *supra*, págs. 212-213, citando a: *RPR & BJJ, Ex parte*, 207 DPR 389, 407 (2021); *Cepeda Torres v. García Ortiz*, 132 DPR 698, 704 (1993). Como corolario de lo anterior, la Regla 16.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 16.1, estatuye que las personas que tengan un interés común, que sin su presencia no se pueda adjudicar la controversia, serán incluidas como partes en el pleito. Ahora bien, el interés común ha sido interpretado por el Tribunal Supremo como aquel que "no se trata de un mero interés en la controversia, sino de aquel de tal orden que impida la confección de un decreto adecuado sin afectarlo". *Deliz et als. v. Igartúa et als.*, 158 DPR 403, 433 (2003). El planteamiento de parte indispensable se puede presentar en cualquier momento, incluso por primera vez en una apelación. *Pérez Ríos v. Luma Energy, LLC, supra*, pág. 213. Asimismo, el tribunal lo puede levantar *motu proprio* dado que, ante la ausencia de una parte indispensable, el tribunal carece de jurisdicción para atender el

caso. *Pérez Ríos v. Luma Energy, LLC, supra*, pág. 213; *RPR & BJJ, Ex parte, supra,* pág. 407.

## C.

Es sabido que los tribunales apelativos actúan como foros revisores. *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 770 (2013). Este Tribunal de Apelaciones tiene como tarea principal aplicar el derecho a los hechos particulares de cada caso. *Íd.* Dicha función, está cimentada en que el Tribunal de Primera Instancia haya desarrollado un expediente completo que incluya los hechos que haya determinado como ciertos ante la prueba que se haya ventilado. *Íd.* Como Tribunal de Apelaciones, no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos la credibilidad y, tampoco esbozamos determinaciones de hechos. *Íd.*

Sin embargo, las conclusiones de derecho son revisables en su totalidad por el Tribunal de Apelaciones. *Íd.* Ante ello, los foros revisores no intervendrán con las determinaciones de hechos coaligadas por el Tribunal de Primera Instancia, la apreciación sobre credibilidad y valor probatorio de la prueba presentada en sala. *Dávila Nieves v. Meléndez Marín, supra*, pág. 771.

Como excepción, en caso de que la actuación del juzgador de los hechos medió pasión, prejuicio, parcialidad o error manifiesto, este Tribunal de Apelaciones puede descartar las determinaciones de los hechos. *Íd*; *Pueblo v. Millán Pacheco,* 182 DPR 595, 642 (2011). El Tribunal Supremo ha resuelto que, "si de un análisis de la totalidad de la evidencia este Tribunal queda convencido de que se cometió un error, como cuando las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida, las consideraremos claramente erróneas". *Dávila Nieves v. Meléndez Marín, supra,* pág. 772,

citando a: *Abudo Servera v. ATPR*, 105 DPR 728, 731 (1977). Ante una alegación de pasión, prejuicio o parcialidad, los foros apelativos debemos evaluar si el juez o la jueza cumplió su función judicial de adjudicar la controversia específica conforme a derecho y de manera imparcial, pues solo así podremos descansar con seguridad en sus determinaciones de hechos. *Dávila Nieves v. Meléndez Marín, supra,* pág. 777.

### III.

En el caso de autos, la parte apelante argumentó que, ante la *Querella* instada por el apelado sobre despido injustificado, este debió incluir en el pleito a la compañía BASF tras tener un interés común en el pleito. Asimismo, alegó que el foro primario evaluó de forma errónea y apasionada la prueba desfilada ante su consideración tras imputarle responsabilidad a la parte apelante por los actos de BASF.

Por estar relacionado los señalamientos de error, procederemos a discutirlos en conjunto.

Hemos esbozado anteriormente que, los tribunales apelativos no intervendrán en las determinaciones de hechos formuladas por el TPI dado que fue el foro que dirimió la credibilidad de los testigos ante su consideración. Además, no podemos intervenir en las determinaciones de hechos salvo que medió pasión, prejuicio, parcialidad o error manifiesto.

Por otro lado, conforme las normas jurídicas pormenorizadas, el Art. 2 de la Ley Núm. 80-1976, *supra,* establece una lista sobre las circunstancias en que un patrono puede despedir justificadamente a un empleado. Es sabido que, para que un patrono despida a un empleado no puede ser por mero capricho y el mismo debe ser por asuntos que afecten el funcionamiento de la empresa. Nuestra jurisprudencia, ha considerado que un

empleado fue cesanteado injustificadamente cuando un patrono despide por capricho y no por causas atribuibles al buen funcionamiento de la empresa y la conducta del empleado.

Como corolario de lo anterior, los empleados que fueron contratados previo a la aprobación de la Ley Núm. 4-2017, *supra*, mantuvieron los derechos y obligaciones laborales.[59] Con ello, si bien es cierto que un patrono puede despedir en ciertas circunstancias a un empleado, actualmente le corresponde al empleado el peso probatorio de demostrar que fue despedido injustificadamente. Empero, cuando un empleado es despedido por un patrono, a consecuencia de una única ofensa, dicha ofensa tiene que ser de tal magnitud que lo requiera para la protección de la buena marcha de la empresa y seguridad de los empleados. *Feliciano Martes v. Sheraton*, *supra*, pág. 384.

Luego de un análisis detallado del expediente del caso y la prueba oral, ante nuestra consideración resolvemos que el foro primario incidió en varios de los señalamientos de error coaligados por la parte apelante.

Esta Curia revisó cuidadosamente la transcripción de la prueba oral y surge que CR Construction no contrató temporalmente al señor Vargas Loubriel por lo que **no** le es de aplicación la Ley Núm. 26-1992, *supra*, citada en el primer señalamiento de error. También, atisbamos que la parte apelante no indicó la correlación que tenía el citado estatuto con lo resuelto en *Ocasio v. Kelly Servs, et al, supra*, ante su argumento de que el apelado fue contratado temporalmente. Sin embargo, enfatizamos que, de la prueba oral y el expediente surge que el señor Vargas Loubriel no fue contratado de forma temporera.

---

[59] El señor Vargas Loubriel le es de aplicación los derechos y obligaciones establecidos previo a la Ley Núm. 4-2017.

Consecuentemente, no le es de aplicación lo establecido en la Ley Núm. 26-1992, *supra.*

Establecido lo anterior, procederemos a discutir los fundamentos que nos forzaron a concluir que el despido del señor Vargas Loubriel fue justificado. En primer lugar, el señor Vargas Loubriel fue contratado desde el año 1994 por la compañía CR Construction. No obstante, el día en que fue despedido el apelado, este incurrió en una conducta violenta que creó un ambiente tenso el cual afectó las labores de ese día en la empresa. Ciertamente, la parte apelante aplicó como primera y única sanción el despido toda vez que el apelado, incurrió en una conducta violenta que afectó el buen funcionamiento de la empresa. *Feliciano Martes v. Sheraton, supra,* pág. 384. La conducta del apelado fue tan lesiva que afectó las labores de los demás empleados ante su amenaza de "meterle un puño" al su supervisor. Asimismo, la animosidad del apelado generó un ambiente tenso en el que los otros empleados y supervisores estaban a la expectativa de que este, en efecto, agrediera a su supervisor. Además, la parte apelante logró evidenciar que en efecto este incurrió en una conducta violenta que el único remedio que tuvo la parte apelante fue cesantearlo ante sus expresiones y amenazas proferidas. Tal como la jurisprudencia dispone, un patrono tiene la potestad de despedir a un empleado ante una amenaza y no tiene que esperar a que nuevamente ocurra otra amenaza. Asimismo, la actitud del señor Vargas Loubriel fue tan lesiva que afectó el buen orden de la empresa por lo que procedía despedirlo, sin esperar a que volviera a ocurrir nuevamente una amenaza de su parte.

A la luz de los fundamentos pormenorizados, resolvemos que el foro primario no actuó correctamente en determinar que el señor Vargas Loubriel fue despedido injustificadamente. A esos fines, la

parte apelante logró rebatir con suficiente especificidad hechos que justificaran el despedir al apelado.

**IV.**

Por los fundamentos que anteceden, se revoca la *Sentencia* apelada y no procede la cuantía ordenada en concepto de mesada.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones